Good morning. My name is Kevin Conlogue, and I represent Plaintiff Appellant Clifton Pleasant, Jr. May it please the Court, I'd like to reserve five minutes for rebuttal. Okay, please watch the clock. Yes, Your Honor. We're here as the result of the District Court granting defendants motion for summary judgment. Plaintiff's position is that the disputed facts that were offered by plaintiffs were not accepted true for purposes of the motion, and also the facts were not viewed in a light most favorable for plaintiffs. The overarching issue in this matter is whether if an individual who is reportedly on drugs, and again, the reports of the individual being on drugs is by other individuals on scene and by deputies. When that reported individual is handcuffed in the back of a patrol car awaiting some emergency medical care, if there's a constitutional right, the state provided medical care. That's the overarching issue in this case. With the facts here, it's not disputed that Senior, the dad who is now decedent, was in the back of a patrol vehicle after there were reports of him being under the influence of various drugs, and deputies even acknowledged that. There was some emergency medical care that was coming on scene, and then when on scene, that medical care was canceled. There's some credibility issues as to Deputy Miranda with respect to that. Initially, Deputy Miranda wrote in the catalog that Senior's vitals were checked by the medical professionals, and they said that he was good to go. During his administrative investigation, he had the same story. The second interview during his administrative investigation, that changed to where he didn't recall. Between that change, the county of San Bernardino interviewed the EMT response that was on scene, and they said they responded for a sick person. They never made patient contact, and they were canceled on scene. So that's the overarching issue with this matter. From a 14th Amendment perspective, plaintiff's position is that there was a special relationship created here, as announced by the Supreme Court decades ago. There is additionally a state-created danger along with that. The special relationship here was created because Senior was handcuffed in the back of the patrol vehicle. That showed control of the deputies over Senior. And along with that, once that special relationship has begun, any 1983 case has strongly held that once somebody is in custody, medical care must be provided, whether it's the 8th Amendment or 14th Amendment. And one of the issues I thought that the court might be concerned about is assuming that there's a special relationship here that was created. When would that end? I don't think that there needs to be a broad, over-sweeping rule when that needs to apply when the special relationship ends. But minimally, it needs to be once medical care has been provided to that individual, meaning there's some medical professional who makes contact with that person. That would satisfy the burden under this special relationship, which did not happen here. So the government opposing counsel cites to this Cartwright decision in the Sixth Circuit where officers picked up an intoxicated person alongside a highway and drove him to a convenience store and left him there. And afterwards, he wandered out and was hit by a car. And the court said there was no violation of the duty of care or that no constitutional violation under the 14th Amendment, no special relationship. How do you distinguish that? With that case out of the Sixth Circuit, I don't think it was focused on the precedent in the Ninth Circuit. And that's where I was going to next, Your Honor, with the state-created danger, which is strongly entrenched in the Ninth Circuit. I think that the case that's most on point in any circuit for this matter is the Pena case. That was not even addressed by the district court, and it wasn't addressed by appellees at any time. So I take it in response to Judge Ikuda's question that you find this case factually indistinguishable from Cartwright, and the stronger claim that you have is really based on state-created danger? With respect with the Cartwright decision, I do think it is factually distinguishable, and the main reason being is with this case, there was summoned medical care. That's the overarching principle here. In the Cartwright case, I don't believe that medical care was summoned or affirmatively canceled on scene. So that's what I think is the distinguishing facts with that case in here. All right. On the state-created danger claim, I think the struggle that your case has is really the showing that you're required to make in this case, which is something higher than gross negligence in order to – a culpable mental state. I think that comes from our case law. So viewing the facts in the light most favorable to your client, what demonstrates that the officer's conduct was more than gross negligence? Yes, the standard would be deliberate indifference. We have to show that the defendants disregarded a known or obvious consequence of his action. And what that means is that there has to be a danger that Senior faced. And so with knowing that there's been multiple reports of Senior being under the influence of drugs, and then he is first transported to one motel, Motel 6, where his behavior continues, where he makes statements of being threatened to be killed, people chasing him, acting paranoid and with anxiety. All of those things show that there's a dangerous situation with this individual and that he's unable to take care of himself. It's no different than the Munger case in that situation where the individual there was intoxicated under alcohol, and they couldn't appreciate the dangers. So there there was sub-freezing weather. I mean, they put him out of the bar in sub-freezing weather and wouldn't let him drive. So the sub-freezing weather seemed to be the – I think we require an actual particularized danger. What was the actual particularized danger in this case? So for purposes of this motion, Your Honor, this is the Wood case that the court did rely upon. It doesn't have to be a specific danger. It could be any danger. Here it's that Senior was left alone with nobody to care for him, and he was near a freeway. The danger that he faced could have been a number of things. He could have been robbed, just how the Wood court suggested that could have happened in that situation. He could have wandered out onto the street. Instead of him getting hurt, another individual could have crashed their car and hurt themselves. He also could have had a stroke or some type of medical failure from his intoxication. All of those things are different dangers. And this court, again, in the Wood case, it's not having a specific danger that's faced. It's any danger. And that aligns with other precedent as well, even under the Eighth Amendment with Farmer. It's all the same concept that if there's any danger that's faced, that's what triggers the constitutional right and the violation. With the Penea case and the Munger case, those are the two most on point. And going back to the Munger case. In Penea, if I'm recalling that correctly, they actually took him off the porch. The officers took the person off the porch who was seriously medically ill, was collapsed, put him inside the house and locked the door and canceled the medical claim. So they specifically prevented anyone from seeing him or helping him. So how is that compared to this? How does that show that what the officers did here was close? That's right on point with what happened here, Your Honor. In fact, I would even say what happened here is a stronger constitutional violation. Medical care was affirmatively canceled on scene here, just as it was in Penea. Stronger than Penea. He wasn't collapsed at that point. I guess it's undisputed that he was speaking to the officers and responding to them. His medical state is disputed, and that's where the facts come in, where there's records that he is a, quote, sick person. He never received any medical care to refute that. Once he was in the back of the patrol vehicle, he was handcuffed and transported from scene where his family was, where his friends were. That makes it stronger than Penea, because in Penea the individual was alone on his porch. No one else was there with him, and he wasn't transported from that residence. Here, Senior was transported from the residence where he was located at, taken away from his family, taken away from his friends. No one was notified where he was going. They all assumed he was going to the jail, and that did not happen. And that's why this is on point with Penea, but I believe it's stronger than Penea for Senior being transported from the scene while handcuffed, and no one is informed where he goes. And ultimately, at the end of the night when he is dropped off, he is abandoned 100 yards from the Green Tree Inn where no one is located. And going back to the knowledge or the deliberate indifference, that abandonment 100 yards from the Green Tree Inn, that shows the knowledge of the danger that he faced. There is no intent of Deputy Miranda to make sure that Senior went into the Green Tree Inn motel. If he did, he would have dropped him off closer to the motel. No different than if we took a cab to this very building or an Uber, whatever you prefer. If that driver dropped us off 100 yards from this building, we would all presume that there's no intent for that driver to drop us off at this address. With that being said, Your Honor, there's also the negligence issue, and I'll be brief on that. The district court correctly found that there was a duty, and in the state of California with a negligence claim, once there's a duty, any breach is up to the jury to decide. The Frostow case, I believe, was most on point with the facts here. But any issues as to breach and causation under the plaintiff's negligence claim would and should have been decided by a jury. And with that, I would like to reserve the last two minutes for rebuttal. You may. Thank you, Your Honors. We'll hear from the other side. Good morning, Your Honors. May it please the Court. My name is Laurel Hohen, Deputy County Counsel, representing the Appellees, the individually named defendants, County of San Bernardino, and City of Victorville in this matter. I think in response to Appellant's argument concerning that the court didn't consider his disputed facts, we have to have some deference to the district court in reviewing that. In fact, the district court's findings of fact should be reviewed for clear error. Here, the orders of undisputed facts from plaintiff were found. We're on summary judgment, right? Yes, correct. This was a summary judgment. So the district court shouldn't be finding any facts at all? Correct. The district court didn't find any facts. But with respect to plaintiff's undisputed fact, the district court made a finding that what they contended was disputed didn't actually dispute what the defendant had indicated was an undisputed fact. Moreover, it wasn't disputed by actual admissible evidence. With respect to the special relationship, I think we have to look specifically at the facts in this case, and the timeline is very important. Yes, Deputy Miranda did detain Senior briefly in the back of his patrol car. It was a 16-minute detention in that patrol car. And considering this, that duration, and with respect to AMR, AMR arrives on scene for the medical care after Senior's already in the back of the squad car. There's no evidence submitted as to who actually canceled AMR. Plaintiff's theory of liability requires that Deputy Miranda took some affirmative act that placed Senior in danger. There's no evidence that Miranda canceled that AMR response. In fact, what the evidence shows, and what we can objectively look at and analyze, is that Miranda believed, based on the CAD report entry, his later testimony, and his administrative investigation, that AMR had checked Senior's vials. That's what his understanding was at the scene. He may not have remembered that a year later when he was interviewed or deposed, but at the time, the evidence shows he believed there had been medical care. Moreover, there was no indication to Miranda that Senior was in danger to himself or others at that particular moment. He was responsive. He was showing that he had money for a hotel for the night. He was indicating awareness of his finances, that he needed shelter for the evening, and that he needed to go about and do that. Thereafter, when Miranda drops him off at the Motel 6, there's no more control. The control ends at that point. How much longer should the state be responsible for somebody? The Pena case that is referenced, it also was a denial of a motion to dismiss seeking qualified immunity. It was not an MSJ. And I think the facts in that case are more egregious. You did have neighbors outside. The neighbors were the ones who had called for 911 in Pena, and the officers there, they did respond. He was collapsed. They put him back in the house, locked the door, so the neighbors couldn't do anything. This is completely different. So what about your opposing counsel's point that they clearly knew that he was under the influence of drugs, he'd been freaking out, it was a volatile situation, and yet they took him from a place where he was with his friends and family and transported him all alone without letting any of his family members know where they were going to drop him off? Yes, and I think that the officers may have suspected he was under the influence, but at the time Miranda was talking to him, speaking to him, he was calmer. It was no longer that volatile situation that had existed that necessitated the original call. It was seniors' request to go to the Motel 6. He was transporting him to a safer location. Was it seniors' request, or was it I thought the testimony was the officer said, well, I suggested it, and he agreed? I believe that's with the Green Tree Inn. At the second transport, senior had wanted a cheaper motel, and it was Deputy Miranda's testimony with respect to the Green Tree Inn. He suggested that, believing it to be cheaper than the Motel 6. With respect to the special relationship, I think it's important that we talk about this custodial relationship. That's what the special relationship requires. At the end, when he drops him off at the Motel 6, any question about the custodial relationship ends. There's a whole other hour before Miranda is called back to the Motel 6. Thereupon, when he gets to the Motel 6, he doesn't necessarily, Miranda doesn't get the information as to what the desk clerk, the entire interaction that had happened. All he knows is that what's in the dispatch log, what's shown in the record, and that is senior didn't have enough money for the Motel 6, and he was stacking chairs, blocking the entrance. That's not showing that he's a danger to anyone. He wasn't violent with anyone. He was calm and rational and communicative with the deputies. Well, doesn't that constrain the evidence in the plaintiff's favor? Doesn't that show that he was still under the influence and acting erratically? Potentially, he was under the influence. Whether he was acting normal or odd, that may be, but that's not grounds to arrest someone. I think there was nothing to indicate he was in a medically dangerous situation at the time. Again, Miranda believed back in Banyan Tree Lane that he had had his vitals checked and was given the all-clear. He had no reason to suspect there was the need for further medical treatment because of a medical emergency. Under the totality of circumstances of the facts in this case, there was a very brief custodial time on Banyan Tree Lane, and after that it ends. If we look at the state-created danger aspect, that's the part that requires the affirmative conduct on behalf of Miranda. We don't have that other than he left him at the Green Tree Inn or the Motel 6. That in and of itself does not put him in a more dangerous situation than what he was in. They responded to the scene of a disturbance on Banyan Tree Lane where there was an incident on the porch, the window had been broken. The homeowners did not want to press charges. They had no reason to take Senior into custody at that point. Do we look at the fact that the dangerousness at the first location  I suppose that that is true as well because in that situation, Senior was making representations that someone was after him. He was not acting. He freaked out. That's what the record establishes before deputies ever got there. But when the deputies arrive, he's no longer acting that way, at least towards the deputies. He's calm. He's thinking about his future. He's thinking about how to take care of himself and how to make efforts to do that. The deputies provide the courtesy ride to the motel, and that in and of itself is not a constitutional violation. The state-created danger requires this deliberate indifference that Deputy Miranda had to appreciate the risk that something was going to happen, that Senior was going to walk onto the freeway or be injured. We can all talk about the dangers if we walk out of the courthouse today, I could get hit by a car crossing the street. That doesn't mean it's reasonable under the circumstances. Again, Miranda had to know something was going to happen to Senior. He could have gone in and slept it off. There was nothing to indicate it was unsafe to leave him where he left him. Unfortunately, acting odd is not grounds for arresting someone or taking them into custody. It requires more. It requires that he's a danger to himself or others. I think if we considered otherwise, it opens the gate to law enforcement looking at, I believe that behavior's odd, you're getting arrested. I don't like the way you're acting, you're getting arrested. It walks a dangerous line in violation of the Fourth Amendment to expand how far this liability would go. With respect to the negligence claim, even if the court found a duty they found under these facts, no reasonable jury could find it was breached. Plaintiff argues that if he was under arrest, Senior was dependent upon the deputies for medical care. But that's not actually the situation. He was never arrested. The Langs did not want to press charges for the broken window. The family didn't. They may have believed he was being taken to jail, but that wasn't the case. It is not supported by the record that Senior needed immediate medical care. He was cognizant, communicative, responsive, and tending to his own needs. I think the district court didn't ignore facts. It considered all the facts and what was properly admissibly before the court. With respect to, again, the special relationship in the Munger case, that Munger case can be distinguished from the facts here. The officers in Munger, they knew it was freezing. They knew Munger did not have his jacket. In fact, they went back to the scene to look for him because they knew it was cold and he didn't have his jacket. That's where you get that deliberate indifference. They knew about the risk.  and left him there anyways in spite of that risk. Here, we've got an individual who may be acting odd. Maybe it's a mental condition. Maybe he's on drugs, but he's not actively presenting to be a danger to himself or others. At those specific times, he's with the deputy. Therefore, there was no indication that there's no concern about, you know, I know he can freeze in freezing temperatures or I know this is a very high crime area and he can be mugged. Those are the type of things the case law focuses on and why this case is distinguishable. Unless the panel has any other questions, I think I've addressed my arguments. Apparently not. Thank you. Okay, I think you have a few minutes for rebuttal. Yes, thank you, Your Honors. Again, the focus of this case is in a constitutional right for a senior to be arrested. That's not what's at issue here. What's at issue is the right for the summoned medical care to have seen senior before he was released from custody. And whether if the detention was an arrest or not, that's a factual issue to be decided by a jury. The Ninth Circuit has repeatedly held that the intrusiveness of the detention can lead to an arrest and being handcuffed in the back of a patrol vehicle, taken away from the senior family. That doesn't seem like a detention. With respect to the deliberate indifference and the knowledge of the deputies, on scene at the Banyan Tree, Deputy Miranda was told by Junior that Senior was on methamphetamine or crack. Where Deputy Miranda responded, there's no way that that's crack. Drawing an inference from that, that shows that Deputy Miranda believed it was methamphetamine. Also, Deputy Romero-Rios told Ms. Lange that he believed that Senior was on PCP. These are all facts that are in dispute. The defendants dispute these facts, but that's why these need to be resolved by a jury, and those facts do show the deliberate indifference. One of the things that was said by the defendants' counsel is that the deputies believed that Senior could, quote, sleep it off. That's the whole issue here. That's what rose liability in the Munger case, is that they believed that he could just sleep off his alcohol when he couldn't appreciate the environment. Here, it's the same thing. Clifton Pleasant Senior could not appreciate his environment. There's evidence by a toxicologist that was submitted by plaintiffs that was not disputed at any point at the district court level. With that, I do thank the court for your time here today. Thank you, Your Honors. I thank both sides for their argument. The case of Clifton Pleasant Junior v. Umberto Morant is submitted.
judges: IKUTA, NGUYEN, OWENS